IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEROY JOSEY,<br>    Plaintiff,<br><br>v.<br><br>PRISON HEALTH SYSTEM, et al.,<br>    Defendants. | Civil Action No. 10-177PITTS<br><br>District Judge Sean J. McLaughlin<br><br>Magistrate Judge Susan Paradise Baxter |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the motion to dismiss filed by Defendants [ECF No. 30] be denied. Plaintiff's motion "not to dismiss" [ECF No. 36] should be dismissed as moot.

**II.   REPORT**

   **A.  Relevant Procedural History**

Plaintiff, a state inmate acting *pro se*, originally filed this civil rights action on February 8, 2010. Plaintiff names the following Defendants: Prison Health System, Dr. Rosen, Dr. Bulk, Physician's Assistant Jackson, and Physician's Assistant Hammer. Plaintiff alleges that his Eighth and Fourteenth Amendment rights have been violated in that Defendants denied him pain medication for his chronic arthritis and sciatica.

1

Defendants have filed a motion to dismiss.[1] ECF No. 30. Plaintiff has filed a brief in opposition to the pending dispositive motion. ECF No. 36 (captioned as Plaintiff's "Motion Not to Dismiss"). The issues are fully briefed and are ripe for disposition by this Court.

### B) Standard of Review

#### 1. *Pro Se* Litigants

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Dep't of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

---

[1] Defendants raise a statute of limitations challenge to the complaint. This Court does not construe any part of the *pro se* complaint as raising any issue which is beyond two years from the filing of this action. The Complaint indicates that Plaintiff has limited his challenge to the time period between October 16, 2009, through the filing of the complaint on February 8, 2010. See ECF No. 4, page 4. Although Plaintiff alludes to medical treatment for Hepatitis-C which be received before October 16, 2009, I construe this as background information provided by Plaintiff in an effort to show his complex medical history.

2

Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

### 2. Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570 (rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

A Court need not accept inferences drawn by a plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 556, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004). Although the United States Supreme Court does "not require heightened fact pleading of

specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D. Del.) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the Twombly/Iqbal line of cases:

> To determine the sufficiency of a complaint under Twombly and Iqbal, we must take the following three steps:
>
>> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) quoting Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).

### C) Exhaustion

#### 1. The Prison Litigation Reform Act

Defendants argue that this lawsuit should be dismissed due to Plaintiff's failure to comply with the exhaustion requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), which provides:

> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility until such administrative remedies as are available are exhausted.

4

Id.

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002); Cutter v. Wilkinson, 544 U.S. 709, 723 n.12 (2005) (noting that the PLRA requires that "a prisoner may not sue under RLUIPA without first exhausting all available administrative remedies."); Concepcion v. Morton, 306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[2] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (by using language "no action shall be brought," Congress has "clearly required exhaustion").[3]

The PLRA also requires "proper exhaustion" meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules of that grievance system. Woodford v. Ngo, 548 U.S. 81, 87-91 (2006) ("Proper exhaustion demands

---

[2] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that §1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

[3] There is no "futility" exception to the administrative exhaustion requirement. Banks v. Roberts, 2007 WL 3096585, at * 1 (3d Cir.) citing Nyhuis, 204 F.3d at 71 ("[Plaintiff's] argument fails under this Court's bright line rule that 'completely precludes a futility exception to the PLRA's mandatory exhaustion requirement.'"). See also Woodford v. Ngo, 548 U.S. 81, 85 (2006) ("Indeed, as we held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought-monetary damages-cannot be granted by the administrative process.").

compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id. at 83; see also Spruill v. Gillis, 372 F.3d 218, 228-29 (3d Cir. 2004) (utilizing a procedural default analysis to reach the same conclusion) ("Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits.").

### 2. The Administrative Process Available to State Inmates

So then, no analysis of exhaustion may be made absent an understanding of the administrative process available to state inmates. "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.' The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. at 218. See also Spruill, 372 F.3d at 231 (having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default.").

The DC-ADM 804 grievance system, available to state prisoners, consists of three separate stages. First, the prisoner is required to timely submit a written grievance within fifteen days of the incident for review by the facility manager or the regional grievance coordinator, who must respond in writing within ten business days. Second, the inmate must timely submit a

written appeal to intermediate review within ten working days, and again the inmate receives a written response within ten working days. Finally, the inmate must submit a timely appeal to the Central Office Review Committee within fifteen working days, and the inmate will receive a final determination in writing within thirty days. See Booth v. Churner, 206 F.3d 289, 293 n.2 (3d Cir. 1997), aff'd. 532 U.S. 731 (2001).

Pursuant to Department of Corrections' Policy DC-ADM 804, grievances must include "a statement of the facts relevant to the claim," and "must identify any person(s) who may have information that could be helpful in resolving the grievance." Id. See also Spruill, 372 F.3d at 233; Williams, 482 F.3d at 639-40. Additionally, the policy provides that "you should submit a different grievance for each different event unless it is necessary to combine the events to support the claim." Id.

### 3. Analysis

Defendants move to dismiss based upon Plaintiff's failure to comply with the PLRA's exhaustion requirements. In support of their argument for dismissal, Defendants only cite Plaintiff's pleadings and do not provide any evidence in support of their argument that Plaintiff's claims are not exhausted. The case law is clear that the failure to exhaust must be asserted and proven by the defendants and it is not a plaintiff's burden to affirmatively plead exhaustion. Jones v. Bock, 549 U.S. at 217 ("... failure to exhaust is an affirmative defense under the PLRA, and ... inmates are not required to specially plead or demonstrate exhaustion in their complaints."); Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Here, the failure to exhaust cannot provide a basis for the dismissal of this case at this initial stage of the proceedings as Defendants have not met their burden to show that Plaintiff has not exhausted.

In the present case, Plaintiff acknowledges that he has not exhausted his administrative remedies in regard to this lawsuit. Instead, he explains that he submitted an initial grievance about December 4, 2009, and had not received any response as of the date of the filing of this complaint (in February of 2010), the date of which is well beyond the ten-day time period in which he should have received a response under DC-ADM policy. See ECF No. 4.

Here, based on the limited record before this Court, Plaintiff's failure to exhaust his administrative remedies should be excused. Interference with an inmate's attempts at exhaustion may impact the *availability* of the administrative remedy process within the meaning of 42 U.S.C. § 1997e. Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) ("A grievance procedure is not available even if one exists on paper if the defendant prison officials somehow prevent a prisoner from using it."). See also McKinney v. Guthrie, 2009 WL 274159, at *1 (3d Cir. 2009) ("[A]n administrative remedy may be unavailable if a prisoner is prevented by prison authorities from pursuing the prison grievance process."). Taking Plaintiff's allegations as true for purposes of this motion only, it is unclear whether the administrative remedy process was available to him. Accordingly, the motion to dismiss should be denied at this stage of the litigation. The issue of exhaustion pursuant to the PLRA may be revisited upon a more fully developed record.

### D) Deliberate Indifference under the Eighth Amendment

Next, Defendants argue that Plaintiff has failed to state a claim of deliberate indifference under the Eighth Amendment.[4]

---

[4] In his complaint, Plaintiff claims that Defendants violated his constitutional rights under both the Eighth and Fourteenth Amendments. Where a due process claim is identical to an Eighth Amendment claim, the plaintiff must "bring the claim pursuant to the more explicit constitutional amendment." Ordonez v. Yost, 289 Fed.Appx 553, 555 (3d Cir. 2008) citing Graham v. Connor, 490 U.S. 386, 395 (1989). Accordingly, this Court need not conduct a separate due process analysis as to the identical factual allegations.

Plaintiff, who suffers from Hepatitis-C, alleges that he returned to prison as a parole violator in October of 2009. Plaintiff claims that upon intake, an unnamed nurse got a list of all Plaintiff's prescription medications from CVS Pharmacy. ECF No. 4, page 2. The nurse explained that Plaintiff's pain medication[5] could not be provided and she substituted Elavil, an anti-depression medication, for the pain medication. Plaintiff alleges that he took the Elavil as directed and "was not relieved of pain and suffered fatigue and sleepness [sic] as a side effect." Id. Plaintiff further alleges that Physician's Assistants Jackson and Hammer and Dr. Bulk denied him pain medication. Id. Plaintiff claims that Dr. Rosen did not examine Plaintiff yet approved the nurse's substitution of medication. Id.

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). The standard is two-pronged, "[i]t requires deliberate indifference on the part of prison officials and it requires that the prisoner's medical needs be serious." West v. Keve, 571 F.2d 158, 161 (3d Cir. 1978). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). A serious medical need may arise "... when a delay in or denial of requested medical treatment causes an inmate to suffer a lifelong handicap or permanent loss." Peterson v. Achebe, 2007 WL 1381753, at *3 (D.N.J. 2007) citing Lanzaro, 834 F.2d at 347.

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference is manifested by an intentional

---

[5] In Plaintiff's grievances (attached to his complaint), it is clear that the pain medication to which Plaintiff is referring is Oxycodone. See ECF No. 4.

9

refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer, 991 F.2d at 68, or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (1990).

However, mere misdiagnosis or negligent treatment is not actionable under § 1983 as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). "Neglect, carelessness or malpractice is more properly the subject of a tort action in the state courts." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1081 (3d Cir. 1976). See also White, 897 F.2d at 108 ("mere medical malpractice cannot give rise to a violation of the Eighth Amendment."). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that so long as a physician exercises professional judgment, his behavior will not violate a prisoner's constitutional rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990) citing Youngberg v. Romeo, 457 U.S. 307, 322-23 (1982). See also Powell v. Symons, 2010 WL 1485682, at *3 (M.D. Pa. 2010).

Deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D. Pa. 2000) ("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). There is necessarily a distinction between a case in which the prisoner claims a complete denial of medical treatment and one where the prisoner has received some medical attention and the dispute is over the adequacy of the treatment. United States ex rel. Walker v. Fayette County, 599 F.2d 533, 575 n. 2 (3d Cir.1979). Any attempt to second-guess the

10

propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Peirce, 612 F.2d 754, 762 (3d Cir. 1979) quoting Bowring v. Goodwin, 551 F.2d 44, 48 (4th Cir. 1977).

Defendants argue that Plaintiff has failed to sufficiently allege an Eighth Amendment violation. They contend that Plaintiff's own complaint outlines the medical care and treatment he received. So then, Defendants reason that Plaintiff has failed to state a constitutional claim because he clearly received medical care and his complaint revolves around the adequacy of that treatment, specifically the substitution of Elavil for Oxycodone.

However, Defendants mischaracterize the key element of Plaintiff's complaint—Plaintiff alleges that he was denied previously prescribed pain medication for his chronic arthritis and sciatica. Plaintiff alleges that his pain medication was discontinued and was replaced with a medication for depression. Deliberate indifference can be manifested by an intentional refusal to provide care, delayed medical treatment, and the denial of prescribed medical treatment. See Durmer, 991 F.2d at 64; Giles v. Kearney, 571 F.3d 318, 330 (3d Cir. 2009) ("Deliberate indifference may be shown by intentionally denying or delaying medical care."). Plaintiff's factual allegations in this regard are sufficient to state a plausible claim for relief in the face of a motion to dismiss.

Accordingly, the motion to dismiss for failure to state of claim should be denied.

**III. CONCLUSION**

For the foregoing reasons, it is respectfully recommended that that the motion to dismiss filed by Defendants [ECF No. 30] be denied. Plaintiff's motion "not to dismiss" [ECF No. 36] should be dismissed as moot.

In accordance with 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72, the parties must seek review by the district court by filing Objections to the Report and Recommendation within fourteen (14) days of the filing of this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of Objections to respond thereto. See Fed.R.Civ.P. 72(b)(2). Failure to file timely objections may constitute a waiver of appellate rights. See Brightwell v. Lehman, 637 F.3d 187, 194 n.7 (3d Cir. 2011); Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: April 3, 2012